**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FLORENCE BOYER, ET AL.,**<br>Plaintiffs,<br>vs.<br>**XAVIER BECERRA, ET AL.,**<br>Defendants. | CASE NO. 17-cv-06063-YGR<br><br>**ORDER DISMISSING AMENDED COMPLAINT; DENYING AMENDED MOTION FOR LEGAL COUNSEL AND REPRESENTATION**<br><br>Re: Dkt. Nos. 6, 7 |

Plaintiff Florence Boyer is representing herself *pro se*. The Court previously dismissed plaintiff's complaint with leave to amend and denied plaintiff's motion for legal counsel. (Dkt. No. 5.) Plaintiff has now filed an amended complaint (Dkt. No. 6 ("AC")) and an amended motion for legal counsel and representation (Dkt. No. 7). For the reasons stated herein, the Court **DISMISSES** the amended complaint without leave to amend and **DENIES** plaintiff's amended motion for legal counsel and representation.

**I.    FACTUAL BACKGROUND AS ALLEGED**

For purposes of reviewing the sufficiency of plaintiff's amended complaint, the Court treats all of the allegations in the amended complaint as true.[1] The events that led to this lawsuit arise largely from plaintiff's ex-husband, Joshua Boyer (herein "J. Boyer"), filing for divorce from plaintiff, and the discrimination plaintiff alleges she experienced in various related court

---

[1] Throughout this Order, "plaintiff" refers to Florence Boyer. Plaintiff Boyer also brings this action as next friend of her minor child, "S." Federal Rule of Civil Procedure 17(c)(2) states that "[t]he court must appoint a guardian ad litem . . . to protect a minor . . . who is unrepresented in an action." While the Court noted in its prior order that Boyer could not represent her child as she is not an attorney nor had she been appointed guardian *ad litem*, plaintiff Boyer has not sought, and the Court has not appointed, a guardian *ad litem* for S. (*See* Dkt. No. 5 at 3.) Because no guardian *ad litem* has been appointed in this case, this Order does not refer to "plaintiffs" in the plural. However, even if the Court had appointed a guardian *ad litem* for S., that would not affect the Court's ruling today that plaintiff's amended complaint must be dismissed.

proceedings. J. Boyer was physically, sexually, legally, and financially abusive to plaintiff. (AC at 26, 28.)[2] J. Boyer was also sexually abusive to S. (*Id*. at 28.)[3] According to plaintiff, J. Boyer filed for divorce on or around April 10, 2015. (*Id*.)

Due to threats made by J. Boyer's stepfather and his friend, and also because of J. Boyer's drug and alcohol activities, plaintiff and S. relocated from their home to a hotel on or around April 25, 2015. (*Id*. at 28–29.) Plaintiff and S. contracted lice from the hotel, and S. became sick with a fever. (*Id*. at 29.) During the consequent visit to the Marin General Hospital Emergency Room on April 27, 2015, plaintiff and S. were separated, and S. was taken from the hospital by J. Boyer. (*Id*.) The following day, while at the Marin City Health and Wellness Center for Grief Counseling, plaintiff was detained by police officers from the Marin City Police Department and taken to Marin General Psychiatric Ward. (*Id*.)

That same day, on April 28, 2015, without notice to plaintiff or plaintiff's attorney Renee Marcelle, J. Boyer and his attorney Cora Lancelle appeared before Judge Verna Adams of the Marin Superior Court and obtained temporary full custody of S. (*Id*. at 30.) After a subsequent "Reese hearing" held between April 30, 2015 and May 14, 2015 and presided over by Judge Adams, plaintiff was discharged from the psychiatric ward at midnight on May 15, 2015 so that she could attend a custody hearing later that morning. (*Id*. at 30–31.) At the hearing, Judge Beverly Wood of the Marin Superior Court ordered supervised visitation to plaintiff, and J. Boyer was allowed to select his friends as the supervisors. (*Id*.) Attached to the court's order were reports from Child Custody Recommending Counselor Gloria Wu and from Child Protective Services ("CPS") which plaintiff alleges were fraudulent. (*Id*. at 31.)

At a January 19, 2016 hearing, Judge Adams instructed plaintiff to stop contacting J. Boyer's employer, which plaintiff claims she never did, and also to stop contacting CPS or the

---

[2] Because the paragraph numbering in the amended complaint repeats in the "Facts" section of the amended complaint, the Court cites to the amended complaint by page number rather than by paragraph number.

[3] The amended complaint confusingly refers at various points to plaintiff's "children" and at other times to a single "child," presumably "S."

2

police department without cause. (*Id*. at 31.) On or around that same day, Judge Adams instructed plaintiff to meet with J. Boyer and his attorney Ms. Lancelle in the hallway outside the courtroom with Family Court Law Facilitator Alexandria Quam. (*Id*.) Ms. Quam tried to get plaintiff to admit that she suffered from bipolar disorder and to agree to provide Ms. Lancelle and J. Boyer a copy of all of plaintiff's medical records. (*Id*.)

At a September 6, 2016 hearing, plaintiff was "falsely accused of being in a catatonic state." (*Id*. at 32.) Judge Adams ordered that all visitation contact with S. be ceased pending medical clearance letters from plaintiff's healthcare providers. (*Id*.) On December 20, 2016, Judge Adams reinstated plaintiff's visitation rights, but only after speaking to plaintiff "in a loud and hostile manner." (*Id*.)

Between January 3, 2017 and April 1, 2017, two hearings were held before Judge Adams. (*Id*.) At both hearings, Judge Adams refused to hear or discuss any information about S., and plaintiff's attorney, Greg Brockbank, consequently advised plaintiff "not to mention and/or provide more evidence that S[.] is being abused in court, not to make a CPS report and/or ask Marin County Police to conduct a welfare check." (*Id*.) Mr. Brockbank did not understand why plaintiff "got penalized for these things." (*Id*.)

On April 11, 2017, Ms. Quam "facilitated" the dissolution of plaintiff's marriage to J. Boyer. (*Id*.) Ms. Quam refused to modify the supervised visitation arrangement between plaintiff and S. (*Id*.)

On October 23, 2017, plaintiff filed this lawsuit against thirty-nine defendants, seeking relief under (1) Titles II and III of the Americans with Disabilities Act ("ADA"), and (2) Section 504 of the Rehabilitation Act. (Dkt. No. 1.) Reviewing the complaint under 28 U.S.C. section 1915(e), the Court dismissed the complaint with leave to amend, noting that the defendants included a "host of state and local actors and individuals" (Dkt. No. 5 at 2) and that "Boyer fail[ed] to connect her complaints about the custody hearing to any legal right of action against each of the named defendants" (*id*. at 3). The Court also cautioned that "Boyer cannot represent her [child] as she is not an attorney nor has she been appointed guardian *ad litem*." (*Id*.) The Court denied plaintiff's motion for legal counsel and representation and advised plaintiff that

3

assistance may be available by making an appointment with the Legal Help Center. (*Id.*)

On December 7, 2017, plaintiff filed her amended complaint, which is now the operative complaint in the case. The sixty-page amended complaint adds a third claim for relief for "Sex Discrimination Violations of State Constitution." (AC at 54.) Plaintiff seeks damages in the amount of $2.8 million each for her and for S., civil penalties, and declaratory and injunctive relief. (*Id.* at 58–59.) Plaintiff sues forty-three defendants,[4] which, for purposes of clarity, the Court categorizes generally as follows:

- State Officials: California Attorney General Xavier Becerra; Chief Justice of the California Supreme Court Tani Cantil-Sakauye

- Local Judges and State Court Department Employees: Four judges of the Marin County Superior Court; Marin County Superior Court Executive Officer James Kim; Marin Family Court Services Child Custody Recommending Counselor Gloria Wu; Marin Family Court Law Facilitator Alexandria Quam

- Health Officials and Staff: Marin Health and Human Services Director Grant Colfax; Marin General Hospital President and Chief Executive Officer Lee Domanico; Marin City Health and Wellness Center Chief Executive Director JayVon Muhammad; Family Service Agency of Marin/Bukelew Executive Director Tamara Player; Rally Family Visitation Services President Sonia Melara; Marin Community Clinic Executive Director Linda Tavazi; Lisa Murphy, LCSW, of Hope and Wellness of Marin; Marin County Emergency Medical Services MA Program Manager Miles Julihn, MA; Novato Community Hospital Chief Executive Officer Brian Alexander; Arnold Kneffer, MD; Lourdes Vargas, MFT

- Attorneys and State Bar Officials: Bar Association of San Francisco/Marin President Yolanda Jackson; six attorneys

- Police Officers: Marin City Police Department Chief of Police John Rohrbacher; Mill Valley Police Department Chief of Police Angel Bernal; Marin County Sheriff's Department Chief of Police Robert T. Doyle; Marin County Jail Captain Jamie Scardina

- Leaders of Non-Profit and Social Services Organizations: Center for Domestic Peace Executive Director Donna Garske; Family and Children's Law Center President David Sutton; Community Violence Solutions Executive Director Cynthia Peterson; Riley Center Executive Director Shari Wooleridge; A Woman's Place Program Executive Director Felicia Houston; Melissa Donald of Community Violence Solutions; Community Action Marin President Amanda McCarthy; Homeward Bound of Marin

---

[4] Linda Tavaszi is sued both in her capacity as the Marin Community Clinic Executive Director and the Ritter Center Executive Director.

4

1  Executive Director Mary Kay Sweeney; Ritter Center Executive Director Linda Tavaszi

- Leaders of Other Organizations: Association of Family and Conciliation Courts MA Executive Director Peter Salem; Association of Family and Conciliation Courts - California Chapter President Michael J. Kretzmer, Esq.

- Other Individuals: Marin Christian Day Academy Principal Christopher Mychajluk; Petersen Dean, Inc. CEO Jim Petersen

Plaintiff also filed an amended motion for legal counsel and representation.

## II. LEGAL STANDARD

28 U.S.C. section 1915(e)(2)(B) requires the Court to "dismiss the case at any time if the court determines that – . . . the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." For purposes of Section 1915, a frivolous claim is one that lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To state a claim for relief, the complaint must contain "a short and plain statement showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5]

In the Ninth Circuit, courts "construe *pro se* filings liberally when evaluating them under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While the standard is higher, our 'obligation' remains, 'where the petition is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). However, a court will not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The district court must provide

---

[5] "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted).

5

the *pro se* plaintiff notice of the deficiencies of his or her complaint prior to dismissal, but a *pro se* plaintiff must still allege facts sufficient to allow the reviewing court to conclude a claim has been stated. *Ferdik v. Bonzelet*, 963 F.3d 1258, 1261 (9th Cir. 1992); *see also Noll v. Carlson*, 809 F.2d 1446, 1449 (9th Cir. 1987) ("[W]hen dismissing a pro se complaint for failure to state a claim, district courts need draft only a few sentences explaining the deficiencies."), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc).

**III. DISCUSSION**

**A. Amended Complaint**

In amending the complaint, plaintiff has provided more detail regarding the events plaintiff is challenging as unlawful, when the events occurred, and which defendants are alleged to have committed the acts. However, while the complaint has grown in length by twenty-two pages, it is now apparent that it fails to state a claim. Plaintiff has failed to allege any facts that connect what occurred to violations of the laws under which she is suing. Where plaintiff has added facts, those facts now show there is no legally cognizable claim and that the Court is without power to grant the relief sought.

The amended complaint also suffers from four additional categories of defects as set forth below.

1. *Plaintiff's Amended Complaint States Legal Conclusions, Not Underlying Facts.*

First, plaintiff has not connected any of the facts that underlie her alleged claims to violations of disability or sex discrimination laws by the specific defendants noted. As a consequence, while the amended complaint provides lots of detail, the assertions are too conclusory. For instance, plaintiff has alleged the following:

- "Defendants have mischaracterized, misdiagnosed and 'regarded' Plaintiffs' [sic] as having a mental impairment . . . and discriminated against Plaintiffs according to these ill-perceived mental impairments." (AC at 3.)

- "Defendants acted on assumptions and sex-based stereotypes about Plaintiffs' disabilities; and failed to apply individualized assessments as required by the American [sic] with Disabilities Act or to analyze or provide appropriate accommodative services and supports in consideration of those disabilities." (*Id*. (emphases omitted).)

- "Moreover, Defendants exploited Plaintiffs' [sic] disabilities and likely retaliated against her for exercising her lawful right to request accommodations." (*Id.* (emphasis omitted).)

- "Plaintiffs were denied the right to present their case without intimidation and denied access to the justice system, denied access to affordable accommodations and denied equal access and due process because of plaintiff mother's [sic] status as a woman as a matter of practice and culture, de facto, woman [sic] do not have equal rights." (*Id.* at 6 (emphasis omitted).)

- "Defendants did not refer Plaintiffs to a disability accommodations coordinator at the courthouse or at any other location, during the pendency of the family court proceedings, nor offer accommodations to the Plaintiffs." (*Id.* at 24.)

- "The State of California and its agencies were inaccessible to Plaintiff Florence Boyer and her child." (*Id.* at 34.)

In evaluating whether a complaint states a claim for relief, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must do more than allege "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. 662, 678 (2009) (internal alteration and quotation marks omitted). Plaintiff's amended complaint fails in this regard. Thus, the factual enhancements added since her original complaint reveal that, while she may have endured a difficult circumstance, plaintiff does not have a viable claim as to the various defendants she names.

### 2. *Plaintiff's Amended Complaint Fails to State a Claim for Disability Discrimination.*

Second, the disability statutes are not applicable here. Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.*, prohibit discrimination on the basis of a disability in the programs, services, or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

Nowhere in the sixty-page amended complaint does plaintiff explain what accommodations she requests or what accommodations were denied. It may be that plaintiff is alleging that she was entitled to a court-appointed attorney for the April 28, 2015 custody hearing as an accommodation for her disability. Her prayer for relief includes a request that the Court "[e]njoin Defendants . . . from engaging in any discriminatory policies and practices against individuals based on their disabilities" and "[o]rder Defendants to modify their policies, practices, and procedures as necessary to bring them into compliance with" Titles II and III of the ADA and Section 504 of the Rehabilitation Act. (AC at 58.) To the extent plaintiff is asking the Court to provide federal oversight over state courts' appointment of "legal representation in custody cases" (AC at 36), the Court cannot. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014) (stating that abstention "is appropriate where the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment" (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974); *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2011) (per curiam)); *see also L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992) ("We should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system."). However, it is not clear to the Court that this is even what plaintiff is asking.

Next, Title III allows claims against private individuals or entities for denial of access to public accommodations run by those individuals "on the basis of disability." 42 U.S.C. § 12182(a); *See also Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000). The statute defines which private entities are considered public accommodations under Title III. *See* 42 U.S.C. § 12181(7). With two possible exceptions, none of the events that plaintiff alleges in the amended complaint appears to have taken place in a public accommodation. Plaintiff describes one incident—after plaintiff and S. contracted lice from a hotel, and S. became sick with a fever—that took place at a hospital, which is a place of public accommodation. *See* 42 U.S.C. § 12181(7)(F). However, plaintiff's allegations regarding that incident, namely that plaintiff and S. were "quarantined due to the lice and left in a room for a long time with no contact" (AC at 29), fail to establish that the hospital denied plaintiff access to its services, let alone that it did so on the

basis of her alleged disability. (*See* AC at 29.) Second, plaintiff describes a traumatic experience she underwent at another hospital, causing her ultimately to fall into a coma for ten days. (*See id*. at 32.) These allegations similarly fail because they do not show that the hospital denied plaintiff access to its services based on her alleged disability.

### 3. *Plaintiff's Amended Complaint Fails to State a Claim for Sex Discrimination.*

In her amended complaint, plaintiff adds a third claim, for "Sex Discrimination Violations of State Constitution." (*Id*. at 54.)[6] Plaintiff states that defendants violated Article 1, section 8 of the California Constitution. (*Id*. at 55.)

As the allegations illustrate, plaintiff's sex discrimination claim appears to be intertwined with her disability claim. (*See, e.g.*, AC at 3 (alleging that "Defendants acted on assumptions and sex-based stereotypes about Plaintiffs' disabilities"); *id*. at 6 (alleging that plaintiff was denied access to accommodations because of her status as a woman).) Again, plaintiff does not connect the facts of what she says happened to her with any legal violation of sex discrimination laws. Plaintiff devotes much of her amended complaint to an attack on the federal government's "Fatherhood" initiative. She notes that while there is a "fatherhood.gov" website, there is no "motherhood.gov" or "parenthood.gov" website. (*Id*. at 5.) She alleges that "Plaintiffs were denied equal access to grants and funds[,] specifically fatherhood funding; access to visitation and reunification programs and funding of other Health and Human Service[s] Programs. Plaintiffs became sexual discrimination victims of a media campaign regarding fatherlessness, and Parental Alienation which identified men as victims of systematic gender/sex bias while blaming single mothers . . . ." (*Id*. at 35 (emphasis omitted); *see also id*. at 57.) Plaintiff additionally states, "The lack of legal representation in custody cases constitutes sex discrimination." (*Id*. at 36 (emphasis

---

[6] The amended complaint also repeatedly cites to Federal Rule of Civil Procedure 5.10. (*See, e.g.*, AC at 9–10, 11, 12, 17, 18.) The Court concludes this is an error, because Rule 5.10 does not exist, and that plaintiff instead meant to cite to Rule 5.1, "Constitutional Challenge to a Statute." However, from what the Court understands of plaintiff's claims, plaintiff is challenging the way she was allegedly discriminated against in state court. Plaintiff cites Rule 5.10 as a "constitutional challenge to the "California Family Court System." (*See, e.g.*, AC at 11–12, 17; *see also, e.g., id*. at 18.) Because the "California Family Court System" is not a state or federal statute, it does not appear that Rule 5.1 applies in this case.

9

omitted).)

As an initial matter, it appears that plaintiff has cited the wrong provision of California law. Article I, section 8, of the California Constitution, under which plaintiff is suing, states, "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." Plaintiff is challenging alleged systemic discrimination in state courts against mothers, particularly mothers with disabilities.

Even if plaintiff had cited her sex discrimination claim correctly, plaintiff has failed to allege what funding or services fathers are provided that she has not been provided as a mother. It appears that she may be alleging that the State of California "denied [her] access to the justice system, denied [her] access to affordable accommodations and denied [her] equal access and due process" because she was a mother rather than a father. (*Id.* at 6.) As with her disability claim, however, plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. She has not connected the events that she says occurred with any violation of sex discrimination laws.

4. *Plaintiff's Amended Complaint Seeks Relief Against Certain Defendants Who are Immune and Seeks Relief Which This Court Cannot Grant.*

Plaintiff's amended complaint suffers from numerous additional defects. In its prior order dismissing plaintiff's complaint with leave to amend, the Court noted that plaintiff resorted to improper group pleading. (Dkt. No. 5 at 3.) Courts consistently conclude that a complaint which "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)); *see also, e.g., Fagbohungbe v. Caltrans*, No. 13-cv-03801-WHO, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014 ("The general allegation regarding 'defendants' is [] insufficient on its face because it does not identify *which* specific defendants[.]") (emphasis supplied); *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("Undifferentiated pleading against multiple defendants is improper.") (internal quotation marks

omitted).

Here, plaintiff continues to use improper group pleading. Plaintiff repeatedly lumps "defendants" together in her allegations. (*See, e.g.*, AC at 24 ("Defendants did not refer Plaintiffs to a disability accommodations coordinator at the courthouse or at any other location . . . nor offer accommodations to the Plaintiffs."); *id*. at 34 ("Defendants exploited Plaintiff's disabilities and vulnerabilities . . . ."; *id*. at 36 ("Defendants violated the California Constitution, Article I, 8 (1879) when plaintiff entered the court.").) She did not correct this deficiency when amending her complaint.

As to certain defendants for whom plaintiff added further detail when amending, the allegations now make clear that they are immune from suits for damages. For instance, plaintiff has added further allegations regarding the timeline of events that occurred during the custody proceedings. These allegations show that the Marin County Superior Court judges whom plaintiff is suing were acting in their judicial capacities. The only events plaintiff describes involving these defendants are actions they took as judges during state court proceedings, for example by "ordering Plaintiff[] into programs, evaluations, therapy, mediation, Supervised Visitation, and ongoing therapy to treat and assess [her]" (*id*. at 27), or making custody rulings (*id*. at 30–32). A state judge is absolutely immune from civil liability for damages for acts performed in his or her judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 553–55 (1967).

The Court acknowledges plaintiffs' plights: Plaintiff has stated that custody of her child was given to an abusive father, that J. Boyer was represented by counsel at times when plaintiff was not, and that she either has or was perceived as having a disability that was the basis for discrimination against her, both for her disability and because she is a mother and/or a woman. Nevertheless, the Court is unable to resolve plaintiff's situation. The Court has described above the numerous deficiencies in plaintiff's amended complaint and why it cannot allow this case to move forward. Further leave to amend will not be granted because it would be futile; the Court already identified in its prior order the deficiencies in plaintiff's complaint. (*See generally* Dkt. No. 5.) The amended complaint either does not address these deficiencies, or the detail provided shows that plaintiff has no claim.

11

### B. Amended Motion for Legal Counsel and Representation

Plaintiff has also filed an amended motion for legal counsel and representation. The Court understands that *pro se* litigants face significant challenges in pursuing their cases, even more so where the *pro se* litigant, as plaintiff describes herself, has a disability that inhibits his or her ability to understand or participate in the proceedings fully. Nevertheless, the law does not provide for the right to counsel in civil cases for *pro se* litigants. *See United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986) ("There is normally … no constitutional right to counsel in a civil case."). In certain circumstances, the Court coordinates with the federal pro bono program to find attorneys to represent *pro se* litigants in their civil cases, but, as explained above, the Court has found that plaintiff has failed to state a claim. Accordingly, plaintiff's amended motion for legal counsel and representation is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, the Court hereby **DISMISSES** plaintiff's amended complaint without leave to amend and **DENIES** plaintiff's amended motion for legal counsel and representation.

This Order terminates Docket Number 7. The case is dismissed, and the Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: April 30, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**